UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **ROBIN Y. STEWART,** }<br>}<br>**Plaintiff,** }<br>}<br>v. }<br>}<br>**T-MOBILE, USA,** }<br>}<br>**Defendant.** }<br>} | Case No.: 2:11-cv-03655-MHH |

## MEMORANDUM OPINION

Plaintiff Robin Stewart brings this action against T-Mobile, USA ("T-Mobile") seeking relief from alleged violations of the ADA and FMLA in her termination and the events leading up to it. Ms. Stewart filed her first complaint on October 18, 2011. (Doc. 1). She filed her second amended complaint—the current operative pleading—on January 31, 2014. (Doc. 26). T-Mobile filed a motion for summary judgment on September 5, 2014. (Doc. 39). For the reasons below, the Court grants T-Mobile's motion.

**I.     Factual and Procedural Background**

T-Mobile hired Ms. Stewart in 2005. Ms. Stewart worked at T-Mobile as a Financial Care Representative in the Birmingham call center until her termination

in 2009.  (Doc. 40, p. 4).[1]  Ms. Stewart acknowledges that when she started work, she understood T-Mobile's policies, including the policy of offering employees 12 weeks of FMLA leave per year.  (Doc. 41-1, p. 10).  Ms. Stewart also was aware that failure to comply with the terms of the FMLA policies—including prolonged absence and failure to timely file documentation—could lead to her dismissal.  (Doc. 41-1, p. 11).

Throughout the course of Ms. Stewart's employment at T-Mobile, she faced various challenges that required her to request ADA accommodations and FMLA leave.  (Doc. 41-1, pp. 8–14, 102–119, 130–160).  Because Ms. Stewart had to have surgery, she requested different periods of continuous and intermittent FMLA leave from December 2008 through July 2009.  (Doc. 40, pp. 5–6).  T-Mobile approved two requests Ms. Stewart made for a reduced schedule from May 2009 to July 2009.  (Doc. 41-1, p. 158; Doc. 41-1, pp. 13–15).  Ms. Stewart requested and T-Mobile approved continuous FMLA leave on April 8, 2009 for the period of April 13, 2009 through May 4, 2009.  (Doc. 41-1, pp. 12, 138).  Ms. Stewart requested and T-Mobile approved intermittent FMLA leave for Ms. Stewart to attend daily radiation therapy through May 29, 2009.  (Doc. 41-1, pp. 13, 146).

---

[1] The Court construes the facts in the record in the light most favorable to Ms. Stewart.  The Court cites to portions of T-Mobile's briefing and evidence to the extent Ms. Stewart has not rebutted T-Mobile's evidence or arguments.  The Court also cites to Ms. Stewart's deposition testimony where applicable.  (Doc. 41-1).

On June 11, 2009, Ms. Stewart worked for the last time in T-Mobile's call center. (Doc. 41-4, p. 22). On June 17, 2009, Ms. Stewart contacted Angela Hodge-Turner in T-Mobile's HR Department and requested FMLA leave from June 12, 2009 to June 26, 2009. (Doc. 41-1, p. 23). Ms. Hodge-Turner directed Ms. Stewart to submit the supporting medical certification on or before July 2, 2009 to have the FMLA leave approved. (Doc. 41-4, p. 24). T-Mobile sent Ms. Stewart a letter on June 17, 2009 enclosing FMLA forms and T-Mobile's leave of absence policy, instructing Ms. Stewart to timely return the medical certification or risk unprotected absences, and informing Ms. Stewart that failure to return to work at the end of her FMLA leave would leave Ms. Stewart without reinstatement rights. (Doc. 41-1, pp. 170–73).[2]

Ms. Stewart did not return the required documentation before July 2, 2009. (Doc. 41-1, p. 26). T-Mobile sent Ms. Stewart a letter on July 10, 2009 to inform her that her request for leave had been denied because she did not provide supporting documentation and that any absences during the time period would be treated as unprotected. (Doc. 41-1, pp. 27, 173). Ms. Hodge-Turner and two other

---

[2] Ms. Stewart contends that she spoke with Ms. Hodge-Turner multiple times between June 12 and July 17, but she cannot remember exactly when these conversations occurred or the details of what was said. She is confident that she told Ms. Hodge-Turner that she (Stewart) was too sick to turn in the forms, and Ms. Hodge-Turner assured her that things "would be fine." (Doc. 41-1, pp. 26–27). T-Mobile denies that these conversations took place. (Doc. 41-2, p. 3). Despite the alleged conversations, Ms. Stewart admits that Ms. Hodge-Turner did indeed tell Ms. Stewart that the documents would need to be returned on or before July 2, 2009. (Doc. 41-1, p. 24).

3

T-Mobile representatives had a conference call with Ms. Stewart on July 20, 2009 to inform Ms. Stewart that her FMLA leave had been denied and that her absences were being added to her attendance record. (Doc. 41-1, pp. 41–42). T-Mobile also informed Ms. Stewart that she was being terminated due to her absences and "ongoing performance issues." (*Id.*; Doc. 40, p. 8).

When an employee leaves the company, T-Mobile terminates health insurance benefits on the last day of the month in which the employee last worked. (Doc. 41-1, pp. 51, 175). T-Mobile's policy states: "Medical, Dental, and Vision coverage ends on the last day of the month in which you worked." (Doc. 41-1, p. 175). Ms. Stewart understood the policy. (Doc. 41-1, p. 51). Consistent with this policy, when T-Mobile let Ms. Stewart go in July 2009, the company cancelled her health insurance retroactively. Because Ms. Stewart's last day at work was June 11, 2009, the effective date of the termination of her health coverage was June 30, 2009. (Doc. 41-1, pp. 51, 60, 175). T-Mobile sent Ms. Stewart a COBRA packet and election form on July 24, 2009. Ms. Stewart elected to receive COBRA benefits, but her coverage was cancelled when she failed to pay her premiums. (Doc. 41-1, p. 60).

Following her termination from T-Mobile, Ms. Stewart applied for social security disability benefits. (Docs. 41-1, p. 53; Doc. 43, p. 5). In her application for SSDI, she asserted that she became unable to work on June 12, 2009 because of

4

her medical conditions and could not return to work on July 20, 2009 because she was still disabled. (Doc. 41-1, p. 86). At her deposition, counsel for T-Mobile asked Ms. Stewart whether she could have returned to work on June 12, 2009. Ms. Stewart replied: "No, I couldn't. That's why I went to the E.R." (Doc. 41-1, p. 78). Ms. Stewart completed her SSA function report form on September 11, 2009, (Doc. 41-1, pp. 196–205). An ALJ awarded Ms. Stewart disability benefits on December 30, 2010. (Doc. 41-1, pp. 185–89). The ALJ found that Ms. Stewart had been disabled since June 12, 2009, and Ms. Stewart collected monthly disability benefits backdated to that date. (Doc. 41-1, p. 185).

Ms. Stewart filed an EEOC charge against T-Mobile, and the EEOC issued her a right-to-sue letter on July 20, 2011. (Doc. 41-2, p. 7). Ms. Stewart filed this lawsuit on October 18, 2011. (Doc. 1). After the case was transferred to the undersigned, the Court denied T-Mobile's motion for partial summary judgment and ordered Ms. Stewart to file a second amended complaint. (Doc. 25). Ms. Stewart filed her second amended complaint on January 31, 2014. In it, Ms. Stewart alleges that T-Mobile: (1) violated the FMLA; (2) violated the ADA; and (3) mistreated her by creating a hostile work environment.[3] (Doc. 26). T-Mobile filed a motion for summary judgment, and the Court held a hearing on the motion

---

[3] Ms. Stewart complains about various actions taken by T-Mobile and its employees that affected her negatively. These allegations do not clearly comprise a particular legal theory, but read liberally in favor of Ms. Stewart, a *pro se* litigant, the complaint appears to contain a hostile work environment claim.

on November 20, 2014.  (Doc. 47).  On this record, the Court takes up T-Mobile's motion for summary judgment.

## II.     Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "If the movant bears the burden of proof on an issue, because, as a defendant, it is asserting an affirmative defense, it must establish that there is no genuine issue of material fact as to any element of that defense."  *International Stamp Art, Inc. v. U.S. Postal Service*, 456 F.3d 1270, 1274 (11th Cir. 2006)  (citing *Martin v. Alamo Community College Dist.*, 353 F.3d 409, 412 (5th Cir. 2003)).

When considering a summary judgment motion, the Court must view the evidence in the record in the light most favorable to the non-moving party.  *Hill v. Wal-Mart Stores, Inc.*, 510 Fed. Appx. 810, 813 (11th Cir. 2013).  This is particularly true when one party proceeds *pro se*.  See *U.S.E.E.O.C. v. Four Amigos Travel, Inc.*, 2013 WL 436427, at *2 (11th Cir. February 5, 2013) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).  For the purposes of summary judgment, courts are to review job discrimination claims no differently than any other kind of summary judgment

motions.  *Chapman v. AI Transport*, 229 F.3d 1012, 1025 (11th Cir. 2000) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 504 (1993)).

## III.  Analysis

As a preliminary matter, Ms. Stewart has not supported her contention that genuine disputes of material fact exist by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  *See* Fed. R. Civ. P. 56(c)(1)(A).  Nor has Ms. Stewart adequately rebutted T-Mobile's cited materials in support of its motion or shown that T-Mobile cannot provide admissible evidence to support its argument.  *See* Fed. R. Civ. P. 56(c)(1)(B).  Although the Court must construe the evidence in the record in the light most favorable to Ms. Stewart, the Court is not obligated to mine the record, searching for evidence that demonstrates that genuine issues of material fact exist.  Even construing Ms. Stewart's complaint and the evidence in the record "more liberally [in her favor] than [the Court] would the complaint of a represented party," Ms. Stewart's claims do not survive T-Mobile's motion for summary judgment.  *See, e.g.*, *Harris v. Ostrout*, 65 F.3d 912, 915 (11th Cir. 1995) (citing *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972)) (discussing the difficulty in "sorting through the

allegations" in a complaint filed *pro se* and affirming in part and reversing in part the district court's grant of summary judgment).

### A. FMLA and ADA Claims–Timeliness

T-Mobile seeks to defeat Ms. Stewart's FMLA and ADA claims on the basis of an affirmative defense. T-Mobile argues that her claims are untimely because: (1) Ms. Stewart filed her FMLA claim more than two years after T-Mobile fired her; and (2) Ms. Stewart filed her ADA claim more than 90 days after she received her EEOC right-to-sue letter. (Doc. 40, pp. 10, 12). The Court agrees.

#### 1. FMLA Claim

Pursuant to 29 U.S.C. §2617(c)(2), unless an employer acted "willfully" in violating the statute, a plaintiff must bring an FMLA claim within two years of the date of the employer's last alleged FMLA violation. T-Mobile terminated Ms. Stewart on July 20, 2009. (Doc. 41-1, p. 41). Ms. Stewart filed her lawsuit on October 18, 2011, more than two years after she was fired. (Doc. 1). Therefore, Ms. Stewart did not bring her FMLA claim before the statute of limitations expired, and her claim fails unless she can show that T-Mobile acted willfully.

The term "willful" is not defined in the FMLA. The Supreme Court has held in the FLSA context that an employer acts willfully when it "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). "If an

employer acts unreasonably, but not recklessly, in determining its legal obligation, then . . . [its actions] should not be . . . considered willful." *Id.* at 135 n.13. Because the FMLA and the FLSA use the term "willful" in nearly identical contexts, many circuit courts have adopted *McLaughlin*'s definition of "willful" for FMLA purposes.[4]  District courts in the Eleventh Circuit have followed this approach too.[5]  The Court finds the reasoning of those courts persuasive. Therefore, the Court will examine the evidence in this case through the lens of the *McLaughlin* definition of willfulness.  To avoid the bar of the statute of limitations on her FMLA claim, at a minimum, Ms. Stewart must identify evidence in the record that demonstrates that T-Mobile recklessly violated her rights under the FMLA.

As a T-Mobile employee, Ms. Stewart had a number of rights under the FMLA.  "The FMLA makes it illegal 'for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.'"  *Pereda v. Brookdale Senior Living Communities, Inc.*, 666 F.3d 1269, 1273–74 (11th Cir. 2012) (quoting 29 U.S.C. § 2615(a)(1)).  "A Plaintiff claiming interference must demonstrate by a preponderance of the evidence that

---

[4] *See, e.g.*, *Hillstrom v. Best Western TLC Hotel*, 354 F.3d 27, 33–34 (1st Cir. 2003); *Porter v. N.Y. Univ. Sch. of Law*, 392 F.3d 530, 531 (2d Cir. 2004); *Hoffman v. Prof. Med. Team*, 394 F.3d 414, 417 (6th Cir. 2005); *Sampson v. Citibank, F.S.B.*, 221 F.3d 196 (D.C. Cir. 1999).

[5] *See, e.g.*, *Hite v. Hill Dermaceuticals, Inc.*, No. 8:12–cv–2277–T–33AEP, 2013 WL 93199, at *2 (M.D. Fla. January 8, 2013); *Majors v. Morgan Tire & Auto, Inc.*, No. CV104–047, 2005 WL 2709634, at *11 (S.D. Ga. Oct. 21, 2005).

she was denied a benefit to which she was entitled." *Pereda*, 666 F.3d at 1274 (citing *Harley v. Health Center of Coconut Creek*, 487 F. Supp. 2d 1344, 1357 (S.D. Fla. 2006) (internal quotation marks omitted)). Under the FMLA, an employee is entitled to a total of 12 workweeks of leave during any 12-month period "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D).

Ms. Stewart has not demonstrated, through her deposition testimony or through other evidence in the record, that T-Mobile violated the FMLA, much less that it violated the FMLA recklessly. Ms. Stewart argues that T-Mobile violated the FMLA by "not granting [her] a 'reasonable accommodation,'" and by telling her that she "had one accommodation and was not entitled to another." (Doc. 26, p. 1). Ms. Stewart also contends that T-Mobile violated the FMLA by backdating the cancellation of her vision insurance benefits and by not allowing her time off when she was sick. (Doc. 43, p. 5). The evidence in the record contradicts Ms. Stewart's unsupported arguments.

T-Mobile gave Ms. Stewart FMLA leave multiple times throughout her employment with the company. (Doc. 41-1, pp. 102–169). T-Mobile notified Ms. Stewart that failure to meet deadlines for the submission of FMLA paperwork might result in her absences being counted in her attendance record. (Doc. 41-1,

pp. 24–25). T-Mobile backdated cancellation of Ms. Stewart's health insurance benefits to the month in which she had last worked at T-Mobile, pursuant to T-Mobile's official policy. The evidence shows that T-Mobile attempted to comply with its FMLA obligations to Ms. Stewart; there is no evidence of recklessness. Because Ms. Stewart has not shown a willful FMLA violation, her FMLA claim is time-barred. *See* 29 U.S.C. §2617(c)(2).

### 2. ADA Claim

The ADA incorporates Title VII's procedural requirements. *See* 42 U.S.C. § 12117(a). When a plaintiff receives notice that the EEOC has dismissed a charge, the plaintiff has 90 days to file suit. 42 U.S.C. § 2000(e)–5(f)(1); *see also Zillyette v. Cap. One Fin. Corp.*, 179 F.3d 1337, 1339 (11th Cir. 1999). Failure to do so results in dismissal "unless [the plaintiff] shows that the delay was through no fault of her own." *Bryant v. U.S. Steel Corp.*, 428 Fed. Appx. 895, 897 (11th Cir. 2011) (citing *Zillyette*, 179 F.3d at 1339–41). "Once the defendant contests the issue, the plaintiff bears the burden of establishing that she filed her claim within 90 days of receiving the notice." *Bryant*, 428 Fed. Appx. at 897 (citing *Green v. Union Foundry Co.*, 281 F.3d 1229, 1234 (11th Cir. 2002)).

If a plaintiff amends a complaint to state an ADA claim, the ADA claim is considered timely if the amendment relates back to an original complaint that was filed within the 90-day window. Federal Rule of Civil Procedure 15(c)(2) provides

that "[a]n amendment of a pleading relates back to the date of the original pleading when . . . the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed. R. Civ. P. 15(c)(2).  In the Eleventh Circuit, "[t]he critical issue in Rule 15(c) determinations is whether the original complaint gave notice to the defendant of the claim now being asserted." *Moore v. Baker*, 989 F.2d 1129, 1132 (11th Cir. 1993) (citing *Woods Exploration & Producing Co., Inc. v. Aluminum Co. of America*, 438 F.2d 1286, 1299–1300 (5th Cir. 1981)).

The EEOC issued a right-to-sue letter to Ms. Stewart on July 20, 2011. (Doc. 41-2, p. 7). Ms. Stewart filed her initial complaint on October 18, 2011, within the 90-day window.  She did not assert an ADA claim in her initial complaint.  She first raised the claim when she moved for leave to amend her complaint on November 15, 2013, well outside the 90-day window.  (Doc. 18). Ms. Stewart's amended complaint does not relate back to date of the original complaint because the original complaint did not put T-Mobile on notice that it would have to defend against an ADA claim.  The complaint mentions only the FMLA. (Doc. 1).  Consequently, Ms. Stewart's ADA claim is untimely. *See, e.g.*, *Merker v. Miami-Dade Cnty. Fla.*, 485 F. Supp. 2d 1349, 1355 (S.D. Fla. 2007) (plaintiff's ADA claim was time barred because it did not relate back to the original complaint, which alleged only wrongful death).

### B.    The Effect of Ms. Stewart's SSDI Benefits

Ms. Stewart's FMLA and ADA claims would fail as a matter of law even if she had filed them on time.  Ms. Stewart filed an application for SSDI benefits shortly after she was fired.  (Doc. 41-1, p. 189).  In the application, Ms. Stewart represented to the ALJ that she became disabled before her termination from T-Mobile.  (Doc. 41-1, p. 189).  The ALJ accepted Ms. Stewart's representation and awarded her SSDI benefits retroactively to June 12, 2009, more than one month before T-Mobile let Ms. Stewart go.  (Doc. 41-1, p. 189).

While successful application for Social Security Disability benefits does not preclude a prima facie case of ADA discrimination or an FMLA violation, Ms. Stewart must provide a sufficient explanation for the Court to reconcile: (1) her representation to the ALJ that she was disabled and unable to work in June 2009, and (2) her representation to this Court that she was a qualified individual able to work when T-Mobile fired her in July 2009.  *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 798 (1999) (holding that a plaintiff "must explain why [a representation of total disability for SSDI benefits] is consistent with her ADA claim that she could perform the essential functions of her previous job, at least with a reasonable accommodation.").

To establish a prima facie ADA claim, Ms. Stewart must demonstrate that she was a "qualified person," meaning she was able to work at her job.  *See, e.g.*,

13

*Sicilia v. United Parcel Service, Inc.*, 279 Fed. Appx. 936, 939 n.3 (11th Cir. 2008) (listing the elements of an ADA claim).  Similarly, under the FMLA, "[i]f the employee is unable to perform an essential function of the position because of a physical or mental condition, . . . the employee has no right to restoration to another position under the FMLA."  29 C.F.R. § 825.216(c); *see also Howard v. U.S. Steel Corp.*, No. 2:11-cv-01010-KOB, 2014 WL 1042968, at *3 (N.D. Ala. March 14, 2014) (granting summary judgment on plaintiff's FMLA claim because plaintiff did not show she was "a qualified individual capable of performing the essential functions of her job," and therefore could not show damages from termination; to get SSDI benefits, plaintiff had represented that she was not capable of performing her job) .

Ms. Stewart has not explained how her representation of total disability for SSDI benefits is consistent with her ADA and FMLA claims.  The discrepancy is fatal to both claims.  *Cleveland*, 526 U.S. at 805 (plaintiff's "sworn assertion in an application for disability benefits that she is, for example, 'unable to work' will appear to negate an essential element of her ADA case—at least if she does not offer a sufficient explanation.").

### C. Hostile Work Environment

Ms. Stewart's hostile work environment claim fails as a matter of law.  To state a hostile work environment claim on the basis of race or gender, a plaintiff

14

must show: (1) that he or she belongs to the protected group; (2) that he or she has been subjected to unwanted harassment; (3) that the harassment was based on the sex or race of the employee; and (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment. The plaintiff must also establish a basis for holding the employer liable. *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999) (*en banc*); *see also Adams v. Austal, U.S.A., L.L.C.*, 754 F.3d 1240, 1248–49 (11th Cir. 2014). An employee must prove that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).

Ms. Stewart does not show either that the conduct she complains of was race- or gender-based or that it was so severe or pervasive that it altered the terms and conditions of her employment. Ms. Stewart alleges a "culture of no" permeated her workplace and cites T-Mobile's workplace practices and procedures, which Ms. Stewart did not like. (Doc. 43, p. 6). She does not allege— much less show—that any of the conduct to which she objects was based on a protected characteristic. Therefore, T-Mobile is entitled to summary judgment on Ms. Stewart's hostile work environment claim.

15

## IV. Conclusion

For the reasons discussed in this opinion, the Court GRANTS T-Mobile's motion for summary judgment on all claims. The Court asks the Clerk to please mail a copy of this opinion to Ms. Stewart.

**DONE** and **ORDERED** this March 23, 2015.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE